## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ASHLEY JONES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | CV 06-B-0429-S |
| | ) | |
| RICHARD ALLEN, Commissioner, | ) | |
| Alabama Department of Corrections, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

This case is presently pending before the court on petitioner's Objection to Report and Recommendation. (Doc. 12.)[1] Petitioner asks the court for relief from her allegedly unconstitutional sentence of life imprisonment without the possibility of parole. The Magistrate Judge recommended the Petition be dismissed with prejudice. For the reasons, set forth below, the court is of the opinion that the Magistrate Judge's Report and Recommendation is due to be adopted, with the changes set forth below, and the Petition is due to be dismissed.

## I.  BACKGROUND

The Alabama Court of Criminal Appeals found the evidence presented at petitioner's trial established the following facts:

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[L]ate on the evening of August 29, 1999, [petitioner's] grandfather, Deroy Nalls, was watching television in the den while her grandmother, Mary Nalls, was in bed asleep.  Also in the house were Millie Nalls, [petitioner's] aunt, and Mary Jones, [petitioner's] 10 year-old sister.  [Petitioner], who was 14 at the time, and her boyfriend, Geramie Hart, entered her grandparents' home pursuant to a plan that [petitioner] and Hart had made two days earlier; the plan called for [petitioner] and Hart to kill everyone in the house, take the Nallses' money, set the house on fire and leave in the Nallses' car.

Hart entered the house carrying a .38 Colt Cobra revolver given to him by [petitioner], who had stolen the gun from her grandfather a few days earlier.  [Petitioner] and Hart proceeded to the den where Deroy Nalls was watching television; Hart shot him twice in the face.  [Petitioner] and Hart then went to the room where Millie Nalls was sleeping and Hart shot her approximately three times.  After realizing she was still breathing, [petitioner] hit Millie Nalls in the head with a heater, stabbed her in the chest nine times and attempted to set fire to Millie Nalls's room by throwing three electric heaters on top of her body.  Millie Nalls was pronounced dead on the scene.

The sound of the gunshots awakened Mary Nalls.  Before she could react, [petitioner] and Hart entered her room and Hart shot her once in the shoulder.  With no more bullets left in the gun, [petitioner] opened a can of lighter fluid and began to pour the fluid on Mary Nalls.  Hart lit the lighter fluid with a match.  [Petitioner] continued to pour more fluid on Mary Nalls as she burned.  Mary Nalls was also stabbed in the shoulder and in her breast.  She suffered severe burns all over her body and was hospitalized for six weeks in order to receive numerous skin grafts and therapy.

[Petitioner] and Hart reentered the den and discovered that Deroy Nalls was still alive.  Using knives found in the kitchen, they both stabbed him multiple times, and left one knife embedded in his back.  [Petitioner] and Hart then poured lighter fluid on Deroy Nalls and set him on fire.  [Petitioner] and Hart asked Deroy Nalls where his money was and then took approximately $300 from his wallet.  Nalls was pronounced dead at the scene.

Mary Jones, [petitioner's] sister, entered the kitchen after hearing the noise.  [Petitioner] began hitting her sister in the face.  Mary Jones fled to her room, pursued by Hart who put the pistol to her head and threatened to kill her.  [Petitioner] intervened and said, "No, let me do it."  (R. 341).  Hart put the pistol down and [petitioner] proceeded to stab Mary Jones fourteen times with

2

a butcher knife.  Jones received stitches for her numerous stab wounds and a chest tube for a collapsed lung.

[Petitioner] and Hart took the keys to Deroy Nalls's [C]adillac without permission and fled the scene.  They picked up 23 year-old, Regina Hayes, who rented them a hotel room where they were later joined by Hart's cousin, D'Andre Riley.

After [petitioner] and Hart had left, Mary Jones rose from the floor and helped her grandmother, Mary Nalls, to walk down the street to a neighbor's home to summon assistance.  Jones eventually called for help from a gas station.

(Doc. 4, Ex. D at 2-3.)

A Jefferson County Grand Jury indicted Jones, on January 14, 2000, of two counts of capital murder each for the murder of her grandfather and her aunt, and with two counts of attempted murder for her attempted killing of her grandmother and her sister.  The cases were consolidated for trial.  After a hearing, the trial court denied petitioner's application for youthful offender status.

A jury trial was held, and, on March 2, 2001, the jury convicted Jones of each count, including four counts of capital murder.  Following a sentencing hearing, Jones was sentenced to life imprisonment without the possibility of parole on each of the capital murder indictments, and to life imprisonment on each of the attempted murder indictments.  The sentences were to run consecutively.  Petitioner filed a Motion for New Trial, which was denied by the trial court.

Jones appealed her conviction, alleging, *inter alia*, that her sentence violated the Eighth Amendment's prohibition of cruel and unusual punishment.[2]  The Alabama Court of Criminal Appeals affirmed her conviction and sentence, and the Alabama Supreme Court denied her application for writ of certiorari.  Petitioner did not file an application for a writ of certiorari in the United States Supreme Court, and she has not filed a petition for post-conviction relief under Ala. R. Crim. P. 32.

Jones filed this federal habeas corpus petition on March 1, 2006.  (Doc. 1.)  She filed an amended petition on March 17, 2006, alleging the following claims:

> 1. Sentencing a fourteen-year-old defendant to life without a possibility of parole violates the Eighth Amendment's prohibition against cruel and unusual punishment;
>
> 2.  Even if the Constitution does not categorically prohibit a sentence for life without parole for fourteen-year-olds, the sentence in this case is unconstitutional because Ashley was a traumatized, abused, mentally ill fourteen-year-old at the time of the offense;
>
> 3.  The mandatory nature of the sentence in this case violated Ashley's rights under the Eighth and Fourteenth Amendments; and
>
> 4.  The Eighth and Fourteenth Amendments require a specialized inquiry into the competency when the defendant was fourteen years old at the time of the offense.

(Doc. 11 at 3 [citing doc. 3].)

---

[2]The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

The Magistrate Judge ordered respondent, Richard Allen, to appear and show cause, on or before March 29, 2006, why the relief requested by petitioner should not be granted. (Doc. 2.)  Respondent filed his answer on May 10, 2006.  In his Answer, respondent argued that the amended petition was time barred and claims two, three and four were precluded because petitioner did not exhaust her state-court remedies.

The Magistrate Judge issued a Report and Recommendation.  (Doc. 11.)  The Report recommends that this court deny the Petition on the ground that it is time barred.  (*Id*. at 12-13.)  Petitioner filed an Objection to the Report and Recommendation on October 7, 2008.

## DISCUSSION

Petitioner Ashley Jones objects to the Magistrate Judge's Report and Recommendation on the following grounds:

> 1.  The State cannot rely on a defense of the statute of limitations because its response to the court's Show Cause Order was untimely.  (Doc. 12 at 2-3.)

> 2.  The magistrate judge erred in finding Ashley Jones's Petition time-barred based on an insupportably narrow reading of *Roper* [*v. Simmons*, 543 U.S. 551 (2005)].  (*Id*. at 4-6.)

> 3.  Because Ashley Jones's unconstitutional sentence is a fundamental miscarriage of justice, the magistrate judge erred in failing to properly address the merits of her claims.  (*Id*. at 6-10.)

> 4.  The Report contains errors and omissions of fact.  (*Id*. at 11-14.)

## A.  THE STATE IS PROCEDURALLY BARRED FROM RAISING STATUTE OF LIMITATION DEFENSE

"Ms. Jones objects to the magistrate judge's conclusion that the State is entitled to rely on a timeliness defense where it flagrantly and inexplicably violated the time requirement placed on it."  (Doc. 12 at 3.)  The court rejects this objection.

"[T]he law is clear that even the failure to serve a timely answer to a petition for writ of habeas corpus does not justify the entry of judgment for the petitioner."  *Mitchell v. Epps*, 2007 WL 1576748, *1 (S.D. Miss. May 30, 2007) (NO. CIVA 1:04CV865 LG)(citing *Stines v. Martin*, 849 F.2d 1323, 1324 (10th Cir.1988); *Aziz v. LeFerve*, 830 F.2d 184, 187 (11th Cir.1987); *United States ex rel. Mattox v. Scott*, 507 F.2d 919, 924 (7th Cir.1975))(emphasis deleted).  Even when untimely filed, "[t]he district court [is] free to either consider or disregard the [State's] response.  *Frick v. Quinlin*, 631 F.2d 37, 40 (5th Cir. 1980)(*Coco v. United States*, 569 F.2d 367, 372 (5th Cir. 1978); *Mattox*, 507 F.2d at 923-24 (7th Cir. 1974)).  "Otherwise, courts have reasoned, the burden of the default, and the petitioner's resulting release from custody, would 'fall upon the community at large.'"  *Mitchell*, 2007 WL 1576748 at *1 (quoting *Mattox*, 507 F.2d at 924).

The magistrate judge chose to consider the State's response and to allow the limitations defense.  This court agrees with this decision.  Jones was given the opportunity to address the limitations defense on the merits.  Therefore, the court finds she did not suffer unfair prejudice in consideration of the limitations defense.

**B. STATUTE OF LIMITATIONS**

Jones's time for filing a habeas petition expired on November 14, 2003.  28 U.S.C.

§ 2244(d)(1)(A).  She contends, however, that her Petition is timely as it was filed one year

after the Supreme Court released its opinion in *Roper v. Simmons*, 543 U.S. 551 (2005).

Jones argues, "The Supreme Court's decision in *Roper* is a change in the law that recognizes

that sentencing standards regarding juveniles have evolved in such a manner that life without

parole for a defendant who was fourteen years old at the time of the offense now violates the

Cruel and Unusual Punishment Clause of the Eighth Amendment."   (Doc. 3 ¶ 42.)

Therefore, she argues that her petition is timely under 28 U.S.C. § 2244(d)(1)(C).  (Doc. 12

at 4.)

> Section 2244(d)(1)(C) states:
>
> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
> . . .
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review . . . .

28 U.S.C. § 2244(d)(1)(C).  The *Roper* decision was decided on March 1, 2005.  Therefore,

Jones's petition is timely *if* the *Roper* decision recognized a new right applicable to the facts

of this case and made its decision recognizing that right retroactive to cases on collateral

review.

The Report and Recommendation in this case states that the *Roper* decision recognized only the right of individuals under the age of eighteen not to be sentenced to death. (Doc. 11 at 10.) Because Jones was sentenced to life without parole, the Report and Recommendation states that the *Roper* decision did apply to her case. (*Id.*) Jones objects to this statement and argues:

> While *Roper* clearly held that subjecting offenders under age eighteen to the death penalty violates the Eighth Amendment, it newly recognized the right of children to be sentenced in accordance with their distinct culpability, level of development, and capacity for reform. *Roper*, 543 U.S. at 569-70.
>
> The Court in *Roper* marshaled new scientific data in finding that children categorically are less culpable and more capable of rehabilitation than adults. In concluding that, because a child's cognitive development is incomplete and she therefore is incapable of exercising the impulse control, maturity, independence, and responsibility expected of adults, "juvenile offenders cannot with reliability be classified among the worst offenders," *Roper*, 543 U.S. at 569, the Court recognized that the constitution requires children be sentenced in accordance with "the diminished culpability of juveniles." *Id*. at 571. Put another way, *Roper* holds that children are distinct from adults in ways constitutionally indispensable to sentencing determinations and that the Eighth Amendment forbids imposing on a child a harsh sentence that extinguishes his "potential to attain a mature understanding of his own humanity." *Id*. at 573-74.

(Doc. 12 at 4-5.)

This court agrees with the Magistrate Judge's conclusion that *Roper* applies only to death sentences. "[T]he [Supreme] Court has 'imposed protections that the Constitution nowhere else provides' in reviewing Eighth Amendment proportionality challenges to capital sentences because 'death is different.'" *United States v. Mendez*, 284 Fed. Appx. 653, 659 (11th Cir. 2008)(quoting *Harmelin v. Michigan*, 501 U.S. 957, 994 (1991)). Without specific

8

instructions otherwise, this court will not apply the new rule of *Roper* to any sentence except death.

The *Roper* decision did not create a new system for sentencing juveniles; it only abolished the death penalty for defendants who were younger than 18 years old at the time of the commission of the offense.  Language in the opinion itself indicates that "life without parole" remains a viable sentence for juveniles.  *Roper*, 543 U.S. at 572 ("[I]t is worth noting that the punishment of life imprisonment without the possibility of parole is itself a severe sanction, in particular for a young person."); *see State v. Bunch*, No. 06 MA 106, 2007 WL 4696832, *6 (Ohio App. 7 Dist. Dec. 21, 2007)("The purpose of mentioning life imprisonment without the possibility of parole [in *Roper*] is not to equate it with the death penalty. . . .  It is simply indicating that life imprisonment without the possibility of parole is a good alternative to the death penalty for juveniles.  It is not an indication that life imprisonment without the possibility of parole or an equivalent sentence to that is cruel and unusual punishment."), *appeal not allowed* 886 N.E.2d 872 (Ohio 2008).

Because the *Roper* decision did not create a new right with regard to sentencing juveniles to anything other than death, the decision did not start a new one-year clock for Jones to file a habeas petition pursuant to 28 U.S.C. § 2244(d)(1)(C).  The Supreme Court may create a new rule that addresses juvenile sentencing in the manner Jones proposes. However, for now, Jones's Petition seeking review of her sentence is barred by the statute of limitations.

## C. FUNDAMENTAL MISCARRIAGE OF JUSTICE – EXCEPTION TO THE TIME BAR

Jones argues that her Petition, even if untimely, is reviewable.  She states:

Ashley Jones is entitled to merits review of all of her claims because her unconstitutional sentence constitutes a miscarriage of justice that cannot be precluded from review based on procedural default.  *Schlup v. Delo*, 513 U.S. 298 (1995).  The magistrate judge applied the wrong legal standard to the extent he suggested that one cannot be actually innocent of a sentence. (Report, at p. 11.)  The "actual innocence" exception is available to a petitioner who can show that her sentence was the result of constitutional error.  *See, e.g., Sawyer v. Whitley*, 505 U.S. 333, 343 (1992); *Sibley v. Culliver*, 377 F.3d 1196, 1205-06 (11th Cir. 2004).  Ashley Jones is innocent of her death in prison sentence because the Eighth Amendment renders fourteen-year-olds (and particularly abused, neglected, and traumatized fourteen-year-olds) ineligible for that sentence.

(Doc. 12 at 6-7.)

"[A] federal court may . . . grant a habeas petition on a procedurally defaulted claim,

without a showing of cause or prejudice, to correct a fundamental miscarriage of justice."[3]

---

[3]The Eleventh Circuit has noted:

A procedurally defaulted claim can support federal habeas relief in only two narrow situations.  First, the petitioner may demonstrate cause and prejudice.  Cause exists if there was "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed.2d 397 (1986). . . .  In addition to cause, the petitioner must also show prejudice:  that "there is at least a reasonable probability that the result of the proceeding would have been different" had the constitutional violation not occurred.  *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

Even without cause and prejudice, the procedural default of a constitutional claim may be excused if enforcing the default would result in a fundamental miscarriage of justice.  This exception applies if the petitioner can

*Fortenberry v. Haley*, 297 F.3d 1213, 1222 (11th Cir. 2002)(citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)).  "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense. *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

The Supreme Court has not addressed whether the "actual innocence" exception applies to procedurally barred sentencing errors in cases other than death.  *See Dretke v. Haley*, 541 U.S. 386, 388-89 (2004)(declining to address whether the actual innocence exception "applies where an applicant asserts 'actual innocence' of a noncapital sentence").  However, the Court defined the "actual innocence" exception as "a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense."  *Id.* at 393 (citations omitted).  The Court has "extended this exception to claims of capital sentencing error," but "limited the exception to cases in which the applicant could show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner

---

show that, in light of new evidence, it is probable that no reasonable juror would have convicted him.  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed.2d 808 (1995).  By making this showing of actual innocence, the petitioner may overcome the procedural default and obtain federal review of the constitutional claim.  *Id.*

*Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008), *petition for cert. filed* (Jan 23, 2009).  Plaintiff does not allege cause and prejudice.

eligible for the death penalty under the applicable state law.  *Id*.  (internal citations and quotations omitted), *quoted in Wellons v. Hall*, 554 F.3d 923, 936 (11th Cir. 2009).

"There is a heightened need for fairness in the administration of death.  This unique level of fairness is born of the appreciation that death truly is different from all other punishments a society inflicts upon its citizens."  *Callins v. Collins*. 510 U.S. 1141, 1149 (1994)(Blackmun, J. dissenting).  Until the Supreme Court declares that the exception to the time limits based on actual innocence can be applied to sentences other than death, this court will not expand the narrow exception.

Nevertheless, even if the court were to apply the "actual innocence" exception, Jones has not shown by clear and convincing evidence that no reasonable juror could have found her guilty of the capital offenses, which carried the mandatory sentence of life in prison without the possibility of parole.  Jones was convicted of two counts of capital murder in violation of Alabama law, § 13A-5-40(a)(2) and (a)(10).  The Alabama Court of Criminal Appeals found sufficient evidence to support her conviction on the two capital counts:

> The evidence at trial tended to establish that [Jones] and Hart planned, two days prior to the offense, to enter the Nallses' home and kill everyone in the house after taking Deroy Nalls's money and automobile.  Prior to the commission of the crimes, [Jones] gave Hart a gun, belonging to Deroy Nalls, that she had taken from his house.  On the evening of August 29, 1999, both [Jones] and Hart entered the [Nallses'] home.  After killing Deroy Nalls and Millie Nalls, and attempting to kill Mary Nalls and Mary Jones, [Jones] and Hart took approximately $300 from Deroy Nalls.  [Jones] and Hart then took Deroy Nalls's Cadillac and fled the scene.

> Section 13A-5-40 (a)(2), Ala. Code 1975, defined "[m]urder by the defendant during a robbery in the first degree or an attempt thereof committed

by the [defendant]" as a capital offense.  Further, § 13A-5-40 (a)(10), Ala. Code 1975, defined "[m]urder wherein two or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct" as a capital offense.

The State presented sufficient evidence from which the jury could find the appellant guilty beyond a reasonable doubt of two counts of capital murder. See Williams v. State, 710 So. 2d 1276 (Ala. Crim. App. 1996).  Furthermore, "[t]he weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury." Smith v. State, 698 So. 2d 189, 214 (Ala. Crim. App. 1996).  We will not invade the province of the jury and reweigh the evidence.

(Doc. 4, Ex. D at 9-10.)

Alabama law requires that a capital offense be punished by a sentence of death, which for a juvenile is prohibited under *Roper*, or life imprisonment without parole.  Ala. Code § § 13A-5-39(1)(defining "capital offense as "[a]n offense for which a defendant shall be punished by a sentence of death or life imprisonment"); § 13A-5-45(a) ("Upon conviction of a defendant for a capital offense, the trial court shall conduct a separate sentence hearing to determine whether the defendant shall be sentenced to life imprisonment without parole or to death.").

Even if this court were to entertain Jones's claim of "actual innocence" of her sentence, it would find  that she cannot show she is actually innocent of her sentence.

Petitioner also contends that her sentence is unconstitutional based on the evolving standards of decency test.  Moreover, "federal courts should be reluctant to review legislatively mandated terms of imprisonment, . . . and . . . successful challenges to the

proportionality of particular sentences should be exceedingly rare." *Hutto v. Davis*, 454 U.S. 370, 374 (1982)(quoting *Rummel v. Estelle*, 445 U.S. 263,   272, 274 (1980)). "Proportionality review under those evolving standards should be informed by objective factors to the maximum possible extent.  [The Supreme Court has] pinpointed that the clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures." *Atkins v. Virginia*, 536 U.S. 304, 312 (2002). Alabama has mandated death or life in prison without parole for any individual convicted of capital murder.  Also, it has established a process for trying minors as adults.  Under the facts of this case, the court cannot say that a sentence of life in prison without the possibility of parole is proportionally unconstitutional based on petitioner's youth, her history, and the offenses.

## D. ERRORS AND OMISSIONS OF FACT IN THE REPORT AND RECOMMENDATION

Jones contends that the Report and Recommendation contains a number of factual errors.  The court finds that these errors do not support petitioner's contention that this court should reject the Report.  However, for the purpose of presenting the facts accurately, the court modifies the Magistrate Judge's Report and Recommendation as follows:

### 1. Grand Jury Indictment

The Report states, "The petitioner was indicted by a Jefferson County Grand Jury on January 14, 2001, on two counts of capital murder for her participation in the killing of her grandfather, Deroy Nalls, and her aunt, Millie Nalls, and with two counts of attempted

14

murder for her role in the attempted killing of her grandmother, Mary Nalls, and her sister, Mary Jones."  (Doc. 11 at 1.)  The record reflects that Jones was indicted on January 14, 2000.  (Doc. 3 ¶ 2 [citing C. 21, 226, 348, 468].)

### 2.  Date for Filing Petition for Writ of Certiorari

The Report states, "[Petitioner's] conviction and sentence became final for purposes of § 2244(d) on November 14, 2002, ninety (90) days after the time for filing a petition for a writ of certiorari expired."  (Doc. 11 at 8.)  However, November 14, 2002 was the date for filing her petition of writ of certiorari, which was 90 days after the certificate of judgment was issued.

### 3.  Deadline for Filing Habeas Petition

The Report states that the deadline for filing a habeas petition, absent any exception, was November 13, 2003.  Under Eleventh Circuit precedent, the anniversary date, November 14, 2003, was plaintiff's deadline for filing her habeas petition.  *Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008).

### 4.  Opinion of the Alabama Court of Criminal Appeals

Jones contends that the Report and Recommendation erroneously describes the opinion of the Court of Criminal Appeals.  The Report states:

> On direct appeal, she alleged, among other things, that the sentence imposed in each case was cruel and unusual punishment in violation of the Eighth Amendment.  (Ex. D at p. 8.)  The Alabama Court of Criminal Appeals found that the issue was not properly preserved for review on appeal.  *Id.*  The court further found that, even if the issue had been properly preserved, she was still not entitled to relief.  *Id.*

15

(Doc. 11 at 2 [footnote omitted].)  This is an accurate summation of the opinion of the Court

of Criminal Appeals, which states:

> The appellant also contends that her sentence of life without parole
> violates the Eighth Amendment's prohibition against cruel and unusual
> punishment.  Specifically, the appellant points to her age and claims that the
> sentence imposed by the trial court subjects her to treatment as an adult and,
> thus, deprives her of her valuable right to be treated as a child.
>
> We first note that this issue is not preserved for our review.  The record
> reveals that the appellant first raised this issue in her motion for new trial.
> However, the appellant failed to object and receive an adverse ruling at the
> sentencing hearing.  The subsequent raising of this issue in a motion for new
> trial will not preserve the issue for review.  See Powell v. State, 608 So. 2d 411
> (Ala. Crim. App. 1992).
>
> Moreover, even if the issue was adequately preserved, we would still
> find adversely to the appellant.  "'The trial court has almost absolute discretion
> in ruling on applications for youthful offender status, and the actions of the
> trial judge are presumptively correct in the absence of a showing to the
> contrary.'"  Mansel v. State, 716 So. 2d 234, 235 (Ala. Crim. App. 1997)
> (quoting Carden v. State, 621 So. 2d 342, 345 (Ala. Crim. App. 1992)).
>
> Although the appellant asserts that she has a right to be treated as a
> youthful-offender, no such right exists.  The record indicates that after holding
> a hearing, reviewing the youthful-offender investigation report, and
> considering the severity of the crime, the trial judge denied youthful-offender
> status.  Thus, it appears from the record that the trial judge did not abuse her
> "almost absolute discretion."  Mansel, 716 So. 2d at 235; See also Harris v.
> State, 794 So. 2d 1214 (Ala. Crim. App. 2000).

(Doc. 4, Ex. D at 8-9.)  The court also considered Jones's claim that her sentences were

"disproportionate and excessive due to her age."  (*Id*. at 16.)  The court again found the issue

not preserved for appeal, (*id*.), and, even if it had been preserved, the court would find no

basis for reversal of her sentence, (*id*. at 17).  The court held:

16

[T]he appellant contends that her two sentences of life imprisonment are disproportionate and excessive due to her age. Specifically, the appellant argues that the trial court abused its discretion by sentencing her to consecutive sentences that she cannot possibly serve. We first note that this issue was not properly preserved for review by this Court. Although the appellant raised this issue in her motion for new trial, the record reveals that she did not object to the imposition of the consecutive sentences during the sentencing hearing. See Harris v. State, 794 So. 2d 1214, 1223 (Ala. Crim. App. 2000). Therefore, we cannot review this issue on appeal.

Furthermore, we would still find adversely to the appellant had the issue been properly preserved for review. It is well settled that "'[w]here a trial judge imposes a sentence within the statutory range, this Court will not disturb that sentence on appeal absent a showing of an abuse of the trial judge's discretion.'" Adams v. State, [815 So.2d 583, 585] (Ala. Crim. App. 2001)(quoting Alderman v. State, 615 So.2d 640, 649 (Ala. Crim. App. 1992)). An exception to this rule is that the appellate courts may review a sentence, although within the statutory range of punishment, that is so disproportionate to the offense charged that it violates a defendant's rights under the Eighth Amendment." Brown v. State, 611 So.2d 1194 (Ala. Crim. App. 1992).

In the instant case, the appellant brutally murdered her grandfather, Deroy Nalls, and her aunt, Millie Nalls. The appellant then attempted to murder her grandmother, Mary Nalls, by stabbing her, pouring lighter-fluid on her, and setting her on fire. The appellant also attempted to murder her younger sister by stabbing her fourteen times with a butcher knife. The egregious facts of this case more than substantiate the trial court's sentence of two terms of life imprisonment without the possibility of parole and two terms of life imprisonment, all to run consecutively. No basis of reversal exists as to this claim.

(Id. at 16-17.) The court finds that the Magistrate Judge did not err in his description of the opinion of the Alabama Court of Criminal Appeals.

17

### 5.  Exclusion of Historical Facts

Jones argues that the Magistrate Judge erred by failing to include a discussion of certain facts, including Jones's history of abuse and neglect, that occurred prior to the offense.  (Doc. 12 at 12.)  She contends, "This offense cannot be understood accurately without acknowledging that it arose out of a traumatized, mentally ill fourteen-year-old girl's attempt to escape her abusive and violent household."  (*Id*. at 12-13.)  She contends that the omission of "critical facts about [petitioner's] background and rehabilitation and circumstances of the offense renders unreasonable and unreliable [the Report and Recommendation's] conclusion that the Eighth Amendment analysis employed in *Roper* does not require reversal of Ashley's mandatory sentence to die in prison."  (*Id*. at 14-15.)

The court has considered these facts and finds that they are not relevant to its decision as to whether *Roper* recognized a new right to special consideration of all sentencing decisions in cases involving minors and/or whether the "actual innocence" standard can be applied to allow Jones to file an untimely petition for relief of her sentence.  Therefore, the court finds no error in the Report and Recommendation based on failure to consider these historical facts and circumstances.

## <u>CONCLUSION</u>

The court has considered the entire file in this action together with the Report and Recommendation, (doc. 11), and the petitioner's Objection to Report and Recommendation, (doc. 12), and has reached an independent conclusion that the Magistrate Judge's Report and

Recommendation is due to be adopted and approved, with the changes set forth above.  The

court hereby adopts and approves the findings and recommendation of the magistrate judge,

with the changes set forth above, as the opinion of the court.  In accord with the Report and

Recommendation, and this Memorandum Opinion, this Petition for Writ of Habeas Corpus

is due to denied.   An appropriate Order will be entered contemporaneously with this

Memorandum Opinion.

**DONE**, this the 26th day of March, 2009.


SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE